CHARLES S. WALLACE, PROTESTANT, v. L. I. MOORE, TRUSTEE, ENTERER.

(Filed 24 September, 1919.)

**1. Railroads—Charter—Statutes—Lands.**

A railroad company is without power to acquire and hold real estate except by statutory authority, either expressly conferred or necessarily implied from the powers contained in its charter or arising to it under the general laws.

**2. Same.**

The Atlantic and North Carolina Railroad Company is not given any power to acquire and hold real estate for general purposes or otherwise except for the purpose of constructing and operating its railroad, restricted usually to a proper right of way and the necessary terminal facilities (ch. 136, Laws 1852) ; and this power is not enlarged under the general statutes. Rev., secs. 2566, 2567, subsecs. 2 and 3.

**3. State Lands—Railroads—Persons—Enterer—Trustee—Trusts.**

A railroad company having no power to acquire lands except that which is limited to railroad purposes, does not come within the intent and meaning of Rev., sec. 1692, permitting all persons who shall come within the State, etc., to enter and obtain grants for the State's vacant and unappropriated lands, either directly or through a trustee who has made the entry and obtained the grant solely for its use or enjoyment.

APPLICATION for an entry of land instituted by defendant in which there was protest by plaintiff on possession of said land claiming the same as owner. The ground of his claim being fully set forth in his written protest, duly filed in the proceedings; heard before *Daniels, J.,* at June Term, 1919, of CARTERET.

The facts pertinent to the case are sufficiently shown in the judgment of his Honor dismissing the cause, as follows:

This cause coming on to be heard before his Honor F. A. Daniels, judge, and a jury, counsel for protestant requested in open court that the enterer, L. I. Moore, as trustee, should disclose to the court in whose behalf he was. trustee. Without ruling of the court, counsel for the enterer stated that the entry was made as trustee for the Atlantic and , North Carolina Railroad Company, and for the purpose of protecting their property adjacent to the water, which they claim has been filled in. Thereupon the protestant denied that the property entered was filled-in property or that the entry was for the purpose of protecting the property now owned by the railroad company. The protestant moved to dismiss the entry upon the ground that same could not be made by a trustee in behalf of the railroad company. His Honor being of the opinion that the railroad company in the first instance could not make the entry, ruled that the entry could not be maintained by a trustee for the benefit of the railroad company. The court sustained the motion and dismissed the entry, to which the enterer excepted and appealed.

*D. L. Ward and Luther Hamilton for protestant.*
*J. F. Duncan and Moore & Dunn for trustee and enterer.*

HOKE, J. The position is very generally recognized here and elsewhere that a railroad corporation is without power to acquire and hold real estate except by statutory authority, either expressly conferred or necessarily implied from the powers contained in the charter or arising to it under the general laws. *Cross v. R. R.,* 172 N. C., 119; *Case v. Kelly,* 133 U. S., 21; *Pacific R. R. v. Seely,* 45 Mo., 212; *Coe v. R. R.,* 10 Ohio State, 372; 1 Elliott on Rys., secs. 390-91-92, etc.; 22 R. C. L., p. 813, title, Railroads, sec. 66.

In the citation to Elliott, *supra,* the general principle is stated as follows:  .

"The rule is well established that a railroad corporation cannot acquire and hold lands for any purposes except such as are authorized by statute. The authority must be conferred by legislation or it does not exist. It is, however, not necessary that the authority should be expressly conferred. It may be implied."

And in answer to the suggestion that the question is one that concerns the State alone, and may not avail as between the corporation and individuals, *Associate Justice Miller,* delivering the opinion in the case of *Case v. Kelly, supra:*

"We need not stop here to inquire whether this company can hold title to lands, which it is impliedly forbidden to do by its charter, because the case before us is not one in which the title to the lands in question has ever been vested in the railroad company or attempted to be so

vested. The railroad company is plaintiff in this action, and is seeking to obtain the title to such lands. It has no authority by the statute to receive such title and to own such lands, and the question here is not whether the courts would deprive it of such lands if they had been conveyed to it, but whether they will aid it to violate the law and obtain a title which it has no power to hold. We think the questions are very different ones, and that while a court might hesitate to declare the title to lands received already, and in the possession and ownership of the company, void on the principle that they had no authority to take such lands, it is very clear that it will not make itself the active agent in behalf of the company in violating the law and enabling the company to do that which the law forbids."

In the present case, a careful examination fails to disclose that the charter (ch. 136, Laws 1852) confers upon the A. & N. C. R. R. Co. any power to acquire and hold real estate for general purposes or otherwise except for the purposes of constructing and operating its road, restricted usually to a proper right of way and the necessary terminal facilities. In section 5 the power is given to acquire real estate by purchase, lease, etc., and the same is immediately restricted by the express limitation, "So far as shall be necessary for the purposes embraced within the scope, object and intent of this charter and no further," etc.

In section 25, conferring power to condemn land when same cannot be acquired by agreement, the same limitation appears, and in section 25 the right of way is limited to 100 feet on either side of the line of road as permanently located. Nor is the power in question in any way enlarged by the general law on the subject. (Rev., ch. 61, secs. 2566-2567, subsecs. 2 and 3). In the first named section it is enacted that the provisions of the general law shall apply and affect railroad charters unless the charter itself otherwise especially provides, but the powers thereby conferred in reference to locating real estate, as shown in the section that follows section 2567 and subsections, are in no wise different from the special charter containing substantially the same restrictions on that subject. Thus in subsection 2, as to donations, it is provided: "To take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation of its railroad; but the real estate received by voluntary grant shall be held and used for the purposes of such grant only." And in subsection 3, as to purchases: "To purchase, hold and use all such real estate and other property as may be necessary for the construction and maintenance of its railroad and the stations and other accommodations necessary to accomplish the object of its incorporation."

This being the law applicable and the proponent having instituted the proceedings for himself as trustee generally, and having avowed in

open court that he was acting for the railroad and intended to hold as trustee for it, a trust that our statute appertaining to this subject would at once execute (*Cameron v. Hicks,* 141 N. C., 21; *Smith v. Proctor,* 139 N. C., 314), this cause should be properly dealt with as if the company itself was the actor in the proceedings and in accord with the authorities heretofore cited, and in the absence of any claim or suggestion that the land applied for is required for the purposes of the road, or that it comes within the powers and privileges as to realty contained in the charter or general laws, we concur in his Honor's view and approve the ruling that proponent is without right to proceed further.

It is contended for defendant that although the charter and general law applicable to railroads may not confer the power to acquire this property, it arises to the company by virtue of the very general terms of the statute authorizing the issuance of grants for the State lands (Rev., ch. 37, sec. 1692), to the effect that any citizen of this State and all persons who shall have come into this State with the *bona fide* intent of becoming citizens thereof shall have the right and privilege of making entries and obtaining grants for vacant and unappropriated lands. Although it is held that corporations are to be regarded as citizens under the statutes conferring jurisdiction on the Federal courts by reason of diversity of citizenship, they are not so considered within the meaning of the constitutional and statutory provisions guaranteeing the privileges and immunities of citizenship, nor do they come generally within this meaning of that term. *Orient Ins. Co. v. Daggs,* 172 U. S., 55-7; *Ins. Co. v. Commonwealth,* 5 Bush, 68 (Ky.). And while the word "person" is more usually held to extend to corporations, this may depend largely on the context and the extent and purpose of the particular law. 7 R. C. L., citing *Overland Cotton Mills v. People,* 32 Col., 263, and other cases. A perusal of the statute in question here will disclose that it applies primarily to natural persons, having general capacity to take and hold real estate, and if it extends to corporations at all, it is subject to the restrictions and limitations established by the charter or the general law.

There is no error, and the judgment dismissing the proceedings is
Affirmed.